IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL LAWRENCE JULIEN,<br><br>    Plaintiff,<br><br>v.<br><br>VALLEJO CITY UNIFIED SCHOOL DISTRICT,<br><br>    Defendant.<br>_____ / | No. C -12-02366 EDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

In this employment discrimination case, Plaintiff Joel Julien alleges that he was subjected to adverse employment actions after he complained about the threatening misconduct of female employees and successfully opposed false charges of sexual harassment. On August 29, 2012, Defendant has filed a motion to dismiss Plaintiff's first, third, fourth and fifth claims. Plaintiff opposed Defendant's motion as to the first claim, but did not oppose dismissal of the third, fourth and fifth claims which were based on violations of 42 U.S.C. § 1983. Therefore, Defendant's motion to dismiss the third, fourth and fifth claims is granted. On October 16, 2012, the Court held a hearing on Defendant's motion. For the reasons stated at the hearing and in this Order, Defendant's motion to dismiss Plaintiff's first claim pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. for harassment and discrimination based on gender is denied.

**Allegations from the complaint**

Plaintiff, a 42-year-old male, began his employment with Defendant on or about August 2005. First Am. Compl. ("FAC") ¶ 8. He worked for two years as an Assistant Principal and Summer School Principal at Vallejo High School, where he helped establish the summer program and received favorable letters from superiors recommending him for promotions. FAC ¶ 8.

In 2008, Defendant promoted Plaintiff to the position of Principal of People's High School, an alternative school for at-risk students who were behind in high school credits. FAC ¶ 9. Dr. Mary Bull, a former Superintendent at Vallejo City Unified School District informed Plaintiff that the staff at People's High consisted of primarily long term employees who had worked together in cliques for a long time. FAC ¶ 9. Among other things, she warned Plaintiff of nepotism at the school, and told him that the staff was used to running the school without any accountability. FAC ¶ 9. Bull told Plaintiff that the students suffered as result of conditions at the school, and told him that she expected him to change the conditions so that the students would benefit. FAC ¶ 9.

From August 2008 until February 18, 2011, Plaintiff carried out his duties as Principal of People's High and improved conditions that benefitted the students. FAC ¶ 10. Plaintiff observed that some of the teachers and staff harbored contempt for the students and spoke about them in a condescending manner, referring to them as animals and savages. FAC ¶ 11. Plaintiff attempted to encourage staff to cease their condescending and negative commentary toward the students by expressing positive support and spending quality time with them. FAC ¶ 11.

Plaintiff observed that teachers at People's High were only working three to five hours per day, but were being paid a regular salary. FAC ¶ 12. Plaintiff brought this to the attention of the school administrator, who claimed she would look into the matter. FAC ¶ 12. Subsequently, the union representative for the teachers told Plaintiff that the teachers did not like that Plaintiff had brought up this issue and that in retaliation, the teachers would refuse to work lunch duty supervising the students. FAC ¶ 12. Plaintiff alleges that Defendant administrators did not address Plaintiff's inquiry, and the teachers' schedule was never changed. FAC ¶ 12.

Before Plaintiff was promoted to People's High, disciplinary proceedings had been commenced by prior Principals against two females employees at the school, Evelyn Bell (the office manager) and Angela Adkins (registrar) for insubordination, poor performance, and belligerent and threatening behavior toward supervisory staff, children and their parents. FAC ¶ 14. From August 2008 to April 2009, Plaintiff personally observed and received reports from supervisors that Bell and Adkins were, among other things, arriving to work late and leaving early, verbally abusive to students, staff, parents and community members, and encouraging other staff to be insubordinate.

2

FAC ¶ 15. Plaintiff disciplined Bell and Adkins by giving them verbal warnings, instituting improvement plans and recommending disciplinary action. FAC ¶ 15. Plaintiff alleges that Adkins told him that she would not follow his directives and if he tried to get her to conform, she would make his life "a living hell." FAC ¶ 15. Plaintiff alleges that Bell and Adkins told Plaintiff that they were essentially "untouchable" and that he would not succeed in holding them accountable. FAC ¶ 15.

Plaintiff was not deterred, and eventually, Bell and Adkins went on leave. FAC ¶ 16. Plaintiff alleges that in retaliation against Plaintiff, Adkins falsely claimed in a worker's compensation proceeding that Plaintiff had sexually harassed her. FAC ¶ 16. The charge was deemed unfounded by a worker's compensation appeals board judge. FAC ¶ 16.

On or about October 31, 2009, at approximately 3:09 p.m., as Plaintiff was driving home from work on the freeway, Adkins tailgated Plaintiff for approximately 17 miles with Bell in the passenger seat. FAC ¶ 17. Plaintiff alleges that when he attempted to lose them by accelerating, Adkins sped up and veered into Plaintiff's lane in an effort to cause him to lose control of his car. FAC ¶ 17. Plaintiff reported this incident to law enforcement, city officials, and others at the school district. FAC ¶ 18. Plaintiff wrote letters of complaint against Bell and Adkins, and County Counsel Carrie Scarletta filed restraining orders against the two employees. FAC ¶ 18. Plaintiff alleges that Defendant failed to take any disciplinary action against Bell and Adkins, and allowed Adkins to return to work at another school. FAC ¶ 18.

Plaintiff alleges that at People's High, he found it necessary to eliminate a position due to budgetary constraints. FAC ¶ 19. Plaintiff exercised his discretion and selected, Randall Goni, a full-time teacher who was not certified in the core subject areas and was not teaching a core subject. FAC ¶ 19. Plaintiff alleges that Goni was part of a teachers' clique that went to the Vallejo City school board demanding Plaintiff's termination because he did not consult them before making his decision. FAC ¶ 19. Plaintiff alleges that the teachers' clique repeatedly leveled false accusations against Plaintiff, but were not successful in convincing the school board to reverse Plaintiff's decision or to terminate him. FAC ¶ 19.

In August 2011, Sharlene Barber began to work as an Office Manager at People's High.

3

FAC ¶ 20. Over the course of five months, Plaintiff observed that Barber had a host of personal problems which interfered with her ability to focus and function competently on her job. FAC ¶ 21. Plaintiff listened to Barber complain about her personal problems, but also recommended professional help. FAC ¶ 22. Plaintiff sent an email to the state superintendent requesting that the District assign a support person for barber to pick up the slack because Barber could not focus on her job. FAC ¶ 22. The superintendent did not assign a support person, but authorized overtime for Barber. FAC ¶ 22. During the time that Barber was confiding in Plaintiff about her personal problems, she sent him numerous text messages in which she thanked him for his kind words and encouragement, and described him as an awesome boss. FAC ¶ 23. Barber had a sign on her desk pointing to Plaintiff's office which expressed her love. FAC ¶ 23. On January 27, 2011 at 7:46 p.m., Plaintiff received a text from Barber stating "Hi uncle, I love you," which Barber claims was misdirected to Plaintiff instead of to her uncle. FAC ¶ 23.

In January 2011, Plaintiff observed Barber talking to the teachers' clique and noticed that Barber's demeanor toward him changed to be more distant. FAC ¶ 24. Plaintiff later found out that Barber was disclosing administrative information and strategy to the teachers' clique. FAC ¶ 24.

On February 10, 2011 at 8:45 a.m., Barber came into Plaintiff's office and told him that another teacher had stated: "Don't send that fucking bitch to my class," referring to a female student. FAC ¶ 25. Plaintiff was very critical of that teacher and thought her conduct was unprofessional. FAC ¶ 25.

On February 11, 2011, Plaintiff took eight students to a transformation conference sponsored by Laney College. FAC ¶ 26. At the end of the conference, Barber sent Plaintiff a text message saying that everything was going well, and that she was heading home for the weekend. FAC ¶ 26. However, Barber later came into Plaintiff's office to complain about the speaker at the conference, who had stated that "poverty-stricken black and brown children also suffer from racism in the school as compared to white children." FAC ¶ 26.

On February 15, 2011, Barber came into Plaintiff's office and stated that she wanted to talk to him in private. FAC ¶ 27. She looked at the pictures of Plaintiff's wife and children and then abruptly left. FAC ¶ 27. About one hour later, Barber stormed into Plaintiff's office, closed the

4

door and stated in a loud voice: "You said you cared about me. You said you loved me." FAC ¶ 28. Plaintiff alleges that the statements attributed to him were inaccurate, and that he was shocked and uncomfortable with what Barber was saying. FAC ¶ 28. Plaintiff asked Barber to open the door, which she would not do, and eventually Plaintiff opened it himself. FAC ¶ 28. Barber told Plaintiff that "people were talking," and that she did not know what to say to them. FAC ¶ 28. Plaintiff told Barber that they could not have any more conversations abut her personal life. FAC ¶ 28.

On February 18, 2011, Plaintiff discovered that Barber had leveled a false sexual harassment claim against him. FAC ¶ 29. An independent investigator determined that the charge of sexual harassment was unsubstantiated. FAC ¶ 30. Barber returned to work, but Plaintiff alleges that Defendant retaliated against him by removing him from his position as Principal at People's High, derailing his career, and by keeping him on paid administrative leave without a position. FAC ¶ 30. Plaintiff alleges that he was subjected to differential treatment because he is male, because he participated in the sexual harassment investigation and opposed the charges, and because his female superiors disagreed with the results of the independent investigation. FAC ¶ 30.

In October 2011, Defendant assigned Plaintiff to a nondescript position in an isolated cubicle in the School and Accountability Division. FAC ¶ 31. While there, he was subject to a hostile and abusive work environment by female superiors who, among other things, expressed their disagreement with the investigator's findings in the Barber matter and prohibited him from leaving his desk or attending meetings. FAC ¶ 31. Plaintiff complained about this misconduct, but was ignored. FAC ¶ 31.

In January 2012, after Plaintiff filed an EEO complaint on Defendant, Defendant placed Plaintiff on paid administrative leave again without a position, causing him to lose seniority and benefits, injuring his reputation and further derailing his career. FAC ¶ 32.

On May 10, 2012, Plaintiff filed his original complaint in this Court and on July 31, 2012, Plaintiff filed an amended complaint. Plaintiff alleges that in June 2012, Defendant demoted Plaintiff and placed him in a teaching position for the next year even though there were comparable principal positions available. FAC ¶ 32.

**Legal Standard**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Discussion**

The only issue remaining on Defendant's motion to dismiss is whether Plaintiff has stated a claim for harassment and/or discrimination based on gender.

**1.     Hostile Work Environment Harassment**

To state a claim under Title VII based on a hostile work environment, an employee must show that his work environment was both subjectively and objectively hostile; that is, he must show that he perceived his work environment to be hostile, and that a reasonable person in his position would perceive it to be so. Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1037 (9th Cir. 2005). The plaintiff also must show that "any harassment took place 'because of sex.'" Id. In making the objective determination, a court must look to all of the circumstances, including the frequency, severity, and nature (i.e., physically threatening or humiliating as opposed to merely

1  verbally offensive) of the conduct. Galdamez v. Potter, 415 F.3d 1015, 1023 (9th Cir.2005). The
2  required severity of the conduct varies inversely with its pervasiveness and frequency. Id. The
3  objective hostility of the environment must be considered from the perspective of a reasonable
4  person belonging to the racial or ethnic group of the plaintiff. Id. Moreover, "there is no legal
5  requirement that hostile acts be overtly sex- or gender-specific in content[.]" EEOC v. Nat'l Educ.
6  Ass'n, 422 F.3d 840, 845 (9th Cir. 2005) ("While sex- or gender-specific content is one way to
7  establish discriminatory harassment, it is not the only way: 'direct comparative evidence about how
8  the alleged harasser treated members of both sexes' is always an available evidentiary route.")
9  (internal citation omitted).

10     Title VII's prohibition of discrimination "because of ... sex" protects men as well as women.
11 Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 682 (1983). "'The critical
12 issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms
13 or conditions of employment to which members of the other sex are not exposed.' . . . Whatever
14 evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at
15 issue was not merely tinged with offensive sexual connotations, but actually constituted
16 '*discrimina[tion]* ... because of ... sex.'" Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75,
17 80-81 (1998) (emphasis in original) (internal citation omitted).

18     Here, Plaintiff alleges that he was subjected to harassment because he is male. FAC ¶ 30. In
19 the context of the circumstances alleged in the complaint, Plaintiff has sufficiently alleged that he
20 was harassed because of his gender.

21     Further, Plaintiff has alleged severe or pervasive conduct. The Supreme Court has stated:

> So, in Harris, we explained that in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. 510 U.S., at 21-22, 114 S.Ct., at 370-371. We directed courts to determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id., at 23, 114 S.Ct., at 371. Most recently, we explained that Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." Oncale, 523 U.S., at 81, 118 S.Ct., at 1003. A recurring point in these opinions is that "simple teasing," id., at 82, 118 S.Ct., at 1003, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms

*United States District Court*
*For the Northern District of California*

> and conditions of employment."
>
> These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." Id., at 80, 118 S.Ct., at 1002. Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992) (hereinafter Lindemann & Kadue) (footnotes omitted). We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view. See, e.g., Carrero v. New York City Housing Auth., 890 F.2d 569, 577-578 (C.A.2 1989); Moylan v. Maries County, 792 F.2d 746, 749-750 (C.A.8 1986); See also 1 Lindemann & Grossman 805-807, n. 290 (collecting cases granting summary judgment for employers because the alleged harassment was not actionably severe or pervasive).

Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998).

Here, Plaintiff alleges that Defendants: (1) failed to act on his complaints against two females who threatened his life while acting on the sole complaint of a female who falsely accused him of sexual harassment; (2) refused to accept the independent investigative findings on the false sexual harassment claim against him; (3) failed to return Plaintiff to his job as Principal or to promised administrative assignments; (4) assigned him to a nondescript position in an isolated cubicle where he was treated with hostility by female co-workers, berated, given negative write-ups, prohibited from leaving or attending meetings and assigned mundane tasks or no tasks at all; and (5) demoted him from Principal to Teacher when Principal positions were available, whereas no disciplinary action was taken against the female employees who threatened him and falsely accused him. These allegations are sufficient to show objective and subjective hostility that was severe and pervasive for purposes of a motion to dismiss. Thus, Defendant's motion to dismiss Plaintiff's harassment claim is denied.

**2. Gender Discrimination**

To establish a prima facie case of gender discrimination, a plaintiff must either provide direct evidence of discrimination or meet the four-part McDonnell Douglas test. See e.g. Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir.2003). The four-part test from McDonnell Douglas requires a showing that: (1) the plaintiff belongs to a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff was subjected to an adverse employment action; and (4) similarly situated individuals outside of his protected class were treated more favorably. See

Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123 (9th Cir. 2000). While Plaintiff is not required to allege specific facts supporting each element of the prima facie showing, he must include in his complaint facts that indicate a plausible claim for gender discrimination. See Twombly, 550 U.S. at 545.

Here, Plaintiff has sufficiently alleged discrimination. He alleges that his female superiors refused to accept the independent investigator's findings on the sexual harassment claim and expressed their bias against him by falsely accusing Plaintiff of harassing the female and by treating him with hostility, berating him, prohibiting him from leaving his desk or attending meetings, and giving him mundane tasks or no tasks at all. FAC ¶ 31. Plaintiff alleges that he was subjected to differential treatment because he is male. FAC ¶ 30.

Further, Plaintiff alleges that Defendant failed to discipline the two women who tailgated him and tried to run him off the road, and that Defendant refused to place Plaintiff back in his job after the sexual harassment investigation against him, yet Defendant returned the complainant back to work in her same classification. FAC ¶ 30. Thus, Plaintiff has sufficiently pled a plausible claim for gender discrimination. Defendant's motion to dismiss this claim is denied.

**Conclusion**

Defendant's Motion to Dismiss is granted as unopposed as to Plaintiff's third, fourth and fifth claims. Defendant's Motion to Dismiss is denied as to Plaintiff's first claim.

IT IS SO ORDERED.

Dated: October 29, 2012

ELIZABETH D. LAPORTE
United States Magistrate Judge